EFRAÍN SANTIAGO COLÓN, KRIMILDA NADAL COLÓN y EFRAÍN SANTIAGO NADAL, apelantes, *v.* SUPERMERCADOS GRANDE y A, B, C, aseguradora de nombre desconocido, apelados.

*Número:* AC-2004-20      *Resuelto:* 24 de enero de 2006

*Joseph Santaella Varela*, abogado de la parte apelante; *William Nadal Colón*, abogado de la parte apelada.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El 29 de noviembre de 1997, a eso de las 6:00 P.M., mientras se encontraba en el estacionamiento del Supermercado Grande de Santa Isabel esperando a que su novia, Amarilis Colón Vázquez, saliera del establecimiento, el joven Efraín Santiago Nadal fue objeto de un intento de "carjacking" perpetrado por dos individuos armados. Durante

éste recibió un golpe en la sien y varios impactos de bala, lo que provocó que tuviera que ser trasladado al Hospital de Distrito de Ponce.(¹)

Al llegar al hospital, el perjudicado se encontraba en estado crítico, con mucho dolor e inestabilidad en sus signos vitales. Durante la evaluación médica se observó que tenía un impacto de bala en el lado derecho del abdomen y otro en el área de la rodilla en el muslo derecho, lo que provocó la fractura de su fémur. Además, se le practicó un CT Scan para determinar el posible daño ocasionado por el golpe en la cabeza y se le entubó sin anestesia. Finalmente, se le extrajo la bala de la rodilla, también sin anestesia.(²)

Así las cosas, el 3 de noviembre de 1999 el joven Santiago Nadal, representado por sus padres Don Efraín Santiago Colón y Doña Krimilda Nadal Colón,(³) presentó una demanda de daños y perjuicios contra Supermercados Grande y su compañía aseguradora. Reclamó que se le compensara por los daños físicos y las angustias mentales que sufrió como consecuencia del aludido intento de "car-

_____

(¹) El foro de instancia determinó en su sentencia: "Mientras Efraín esperaba por Amarilis, se le acercaron dos individuos quienes le dijeron que se bajara del vehículo y que dejara las llaves en el mismo. Le indicaron nuevamente lo mismo y lo golpearon con un arma en el lado izquierdo de su sien. Efraín procedió a bajarse del vehículo de motor, llevando con él las llaves del vehículo. Cuando llegaba al área frontal del vehículo de motor sintió una detonación y un impacto de bala. Caminó un poco más y escuchó dos detonaciones adicionales cayendo entonces al suelo. Efraín no conocía a sus agresores, quienes lo hirieron de bala." Apéndice, pág. 59.

(²) A raíz de las heridas sufridas, Efraín Santiago Nadal estuvo hospitalizado por cuarenta y cinco días y se le practicaron varias operaciones para corregir perforaciones en el colon y para reparar el hígado. Del tiempo que pasó en el hospital, cinco días los pasó en la Sala de Cuidado Intensivo, entubado y conectado a un respirador, y le administraron no menos de veintiséis transfusiones de sangre. Posterior a la hospitalización, fue sometido a una operación para tratar la fractura del fémur derecho, por lo que permaneció enyesado por aproximadamente dos meses. Luego fue sometido a otra operación para tratar una infección en uno de los puntos de la herida del abdomen. Además, recibió aproximadamente dieciocho terapias para darle movimiento a su pierna, rodilla y cadera. No obstante, quedó con una cojera severa por razón del acortamiento y deformidad del fémur derecho. Como resultado de lo anterior y según las determinaciones del foro de instancia, el joven Santiago Nadal quedó con un veintisiete por ciento de impedimento en sus funciones fisiológicas.

(³) Para la fecha de los hechos y de la presentación de la demanda, el demandante era menor de edad. Por tal razón, la demanda no estaba prescrita en cuanto a él, aun cuando fue presentada casi dos años después de ocurrido el incidente.

jacking" de que fue objeto en el estacionamiento del demandado. Arguyó que *la causa de los daños que sufrió el día de los hechos fue la falta de vigilancia y la poca iluminación que tenía Supermercado Grande en sus instalaciones, específicamente en el estacionamiento. Sostuvo, además, que éste conocía la alta incidencia de criminalidad que había en Santa Isabel para esas fechas y de actos criminales anteriormente ocurridos en sus instalaciones y áreas circundantes.*

El 10 de abril de 2000 Supermercado Grande contestó la mencionada demanda negando la mayoría de las alegaciones. Adujo que, conforme a la jurisprudencia del Tribunal Supremo, no tenía responsabilidad alguna para con el demandante, ya que él

> ... no es un Centro Comercial Regional por lo cual no existe y resulta oneroso el exigirle el deber de proveer [u] ofrecer un grado de protección y seguridad independiente del que ofrecen las agencias de seguridad pública por actos delictivos de terceros. Apéndice, pág. 80.

Durante la etapa del descubrimiento de prueba, las partes llegaron a unas estipulaciones de hechos. Entre éstas, *que para el 29 de noviembre de 1997 Supermercado Grande tenía el control del estacionamiento en sus instalaciones en Santa Isabel y que carecía de personal de seguridad en éste.*

Durante el juicio se presentó prueba testifical y pericial relativa a los daños físicos y mentales, y el grado de incapacidad sufrido por el demandante. Asimismo, se presentaron varios artículos de periódico, estadísticas criminales de la Policía de Puerto Rico y el testimonio del Sgto. Miguel A. Sosa, *tendentes a demostrar el nivel de incidencia criminal existente en el pueblo de Santa Isabel, específicamente en el sector donde ubica el Supermercado Grande.*

En cuanto a este punto, el Tribunal de Primera Instancia estimó probado que el nivel de criminalidad era alto para esa fecha y que el personal de la Policía asignado a Santa Isabel no era suficiente para cubrir el pueblo entero.

De igual forma, *concluyó que entre los meses de febrero y noviembre de 1997 ocurrieron ocho incidentes de apropiaciones de vehículos de motor y que cinco de ellos ocurrieron en el estacionamiento del Supermercado Grande, uno en un solar yermo frente a éste y los dos restantes en las cercanías. Asimismo, determinó que en agosto de 1997 un empleado fue víctima de dicho delito en las instalaciones del referido supermercado.* Finalmente, indicó que el 11 de octubre de 1997 el Sr. Nestor Marrero Delfí había sido víctima de un "carjacking" en el estacionamiento del supermercado y que de su testimonio surgió que luego del suceso "entró al Supermercado Grande y allí reportó el incidente y de allí le notificaron a la policía".

Evaluada la prueba antes mencionada, el foro primario emitió sentencia en la que declaró *con lugar* la demanda y condenó a la parte demandada al pago de la suma total de $250,000 por todos los daños y perjuicios sufridos por el joven Santiago Nadal. El mencionado foro *no* hizo determinación alguna de temeridad, por lo que no le impuso partida de honorarios de abogado a Supermercado Grande.

Respecto a la alegación de Supermercado Grande en torno a que no tenía obligación de proveer seguridad a sus visitantes, pues no "cualificaba" como "Centro Comercial Regional", el mencionado foro estableció que "[u]na entidad que opera un negocio con conocimiento de que han ocurrido actos delictivos en el área que controla, *tiene el deber de implantar medidas de seguridad que dentro del concepto de lo prudente y razonable, garantice un grado razonable de protección a sus clientes*" —(énfasis nuestro) Apéndice, pág. 72— y que al optar por no tener algún sistema de servicios o vigilancia, actuó negligentemente.

Asimismo, el aludido foro indicó que

[e]l hecho de no ser un "Centro Comercial Regional" no diluye este deber. Cuando se considera el historial delictivo en el área, la localización de la empresa comercial, la época del año, la naturaleza de la actividad comercial llevada a cabo, la falta de previsibilidad *y la ausencia de las más elementales medidas*

*de seguridad* no cabe sino concluir que Supermercado Grande fue negligente en este caso y que debe responder por los daños y perjuicios solicitados. (Énfasis nuestro.) Apéndice, pág. 72.

Inconforme con dicha sentencia, Supermercado Grande compareció —vía recurso de apelación— ante el entonces Tribunal de Circuito de Apelaciones. Cuestionó la determinación del foro primario relativa a que tenía conocimiento de los actos delictivos previos ocurridos en su estacionamiento, así como la imposición de responsabilidad para con el demandante, a pesar de no ser un "centro comercial regional". Asimismo, adujo que incidió el foro de instancia al no imponerle algún tipo de responsabilidad al demandante y al evaluar el grado de incapacidad de éste.

A su vez, Efraín Santiago Nadal acudió —vía recurso de apelación— ante el foro apelativo intermedio. En su escrito sostuvo que el foro primario erró al no determinar que Supermercado Grande fue temerario al defenderse de la acción instada en su contra y negar responsabilidad.

Posteriormente, y tras ser solicitado por las partes, el foro apelativo intermedio *consolidó* los recursos antes mencionados. Así las cosas, el ahora Tribunal de Apelaciones dictó sentencia mediante la cual *revocó* la sentencia del foro de instancia y determinó que, a la luz de lo resuelto por este Tribunal en *J.A.D.M. v. Centro Com. Plaza Carolina*, 132 D.P.R. 785 (1993), Supermercado Grande *no* tenía el deber de ofrecer seguridad adicional a la ofrecida por las agencias del orden público, ya que no era un "centro comercial regional". De igual forma, el mencionado foro declaró "no ha lugar" la apelación presentada por el joven Santiago Nadal.

Insatisfecho con la referida decisión, Efraín Santiago Nadal acudió —vía recurso de apelación— ante este Tribunal. En su escrito alega que el aludido foro incidió al

... concluir que el Tribunal Supremo resolvió que: "la solución adoptada [en *J.A.D.M. v. Centro Com. Plaza Carolina,* supra] al presente caso fue la de reconocer un deber de proveer segu-

ridad adicional solamente a cierto tipo de comercios, los centros comerciales regionales" en conflicto con decisiones previas del Tribunal de Circuito de Apelaciones.

... concluir que Supermercado Grande en Santa Isabel es un negocio de menor escala que no tiene obligación de proveerle seguridad adicional a sus clientes o visitantes.

... concluir que no era previsible la ocurrencia del delito cometido contra el demandante Efraín Santiago Nadal.

... desestimar el recurso KLAN200300690 presentado por la parte apelante solicitando la imposición de temeridad contra la parte apelante. Apelación, págs. 5–6.

Le concedimos a ambas partes un plazo para presentar sus respectivos alegatos. Únicamente compareció la parte apelante, por lo que le otorgamos a la parte apelada Supermercados Grande un *nuevo plazo* para que cumpliera con nuestro requerimiento, advirtiéndole que de no hacerlo resolveríamos el recurso sin el beneficio de su comparecencia. *No habiendo comparecido ésta en el término establecido, procedemos a resolver el recurso sin el beneficio de su posición.*

I

■ Como es sabido, una persona o empresa que tiene un establecimiento comercial abierto al público debe tomar las medidas necesarias para que las áreas a las que tienen acceso sus clientes sean razonablemente seguras. En otras palabras, "el dueño u operador debe ejercer un cuidado razonable para mantener la seguridad de las áreas accesibles al público, para que, de ese modo, se evite que sus clientes sufran algún daño". (Énfasis suprimido.) *Colón y otros v. K-Mart y otros*, 154 D.P.R. 510, 518 (2001). Véanse, además: *Ramos v. Wal-Mart*, 165 D.P.R. 6862 (2005); *Soc. Gananciales v. G. Padín Co., Inc.*, 117 D.P.R. 94, 104 (1986). *Este deber incluye la obligación de anticipar, así como la de evitar, que ocurran daños en el establecimiento.* Véase *Colón García v. Toys "R" Us, Inc.*, 139 D.P.R. 469, 473 (1995).

■ No obstante lo anterior, hemos reiterado que el

dueño de un establecimiento comercial *no* tiene responsabilidad absoluta sobre cualquier tipo de daño sufrido por sus clientes. *Colón y otros v. K-Mart y otros*, ante. Por tal razón, para poderle imponer responsabilidad, el demandante tiene que demostrar que éste incurrió en un acto u omisión negligente que causó o contribuyó a los daños sufridos por el perjudicado. *Cotto v. C.M. Ins. Co.*, 116 D.P.R. 644, 650 esc. 9 (1985), citando a H. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, San Juan, Pubs. J.T.S., 1980, Vol. 2, Cap. 12, pág. 64.

La responsabilidad de los establecimientos comerciales antes mencionada se evaluará conforme al Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141,[4] el cual es la fuente de responsabilidad civil extracontractual en Puerto Rico. Dicho precepto dispone que todo perjuicio material o moral conlleva su reparación si concurren tres elementos básicos: (1) la presencia de un daño físico o emocional en el demandante; (2) que éste haya surgido a raíz de un acto u omisión culposa o negligente del demandado, y (3) que exista un nexo causal entre el daño sufrido y el acto u omisión. *Mun. de San Juan v. Bosque Real, S.E.*, 158 D.P.R. 743 (2003); *Colón y otros v. K-Mart y otros*, ante; *Montalvo v. Cruz*, 144 D.P.R. 748 (1998).

Particularmente, en los casos en que el daño alegado se deba a una omisión, se configurará una causa de acción cuando: (1) exista un deber de actuar y se quebrante esa obligación, y (2) cuando de haberse realizado el acto omitido se hubiese evitado el daño. *Administrador v. ANR*, 163 D.P.R. 48 (2004); *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294 (1990); *Soc. Gananciales v. G. Padín Co., Inc.*, ante. Así pues, hemos resuelto que la *pregunta de umbral* en estos casos es si existía un deber jurídico de actuar de parte del

---

[4] Este artículo dispone: "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización."

alegado causante del daño. Véanse: *Soc. Gananciales v. G. Padín Co., Inc.*, supra, pág. 106; *Arroyo López v. E.L.A.*, 126 D.P.R. 682, 686–687 (1990).

■ Habida cuenta de lo anterior, la norma en estos casos establece que "si la omisión del alegado causante del daño quebranta un deber impuesto o reconocido por ley de ejercer, como lo haría un hombre prudente y razonable, aquel grado de cuidado, diligencia, vigilancia y precaución que las circunstancias le exigen" y el daño causado se debió a dicho deber omitido, cabrá imponerle responsabilidad al causante. *Administrador v. ANR*, ante, citando a *Arroyo López v. E.L.A.*, ante, pág. 686.

■ Entre los deberes de actuar se encuentra el deber de cuidado. Este deber incluye,

> ... tanto la obligación de anticipar, como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible. "Pero la regla de anticipar el riesgo no se limita a que el riesgo preciso o las consecuencia exactas arrostradas debieron ser previstas. Lo esencial es que se tenga el *deber de prever* en forma general consecuencias de determinada clase." *Elba A.B.M. v. U.P.R.*, ante, pág. 309, citando a *Ginés Meléndez v. Autoridad de Acueductos*, 86 D.P.R. 518, 524 (1962).

■ Para poder determinar lo que constituye un daño razonablemente previsible, debemos acudir a la conocida figura del hombre prudente y razonable según definida en nuestra jurisprudencia. *Elba A.B.M. v. U.P.R.*, ante; *Ortiz v. Levitt & Sons*, 101 D.P.R. 290 (1973). Como resultado de lo anterior, en el pasado hemos resuelto que "[e]l deber de previsión no se extiende a todo peligro inimaginable que concebiblemente pueda amenazar la seguridad ... sino a aquel que llevaría a una persona prudente a anticiparlo". *Vélez Rodríguez v. Amaro Cora*, 138 D.P.R. 182, 189 (1995). Véase *Hernández v. La Capital*, 81 D.P.R. 1031, 1038 (1960).

■ De otra parte, y para poder determinar si un establecimiento comercial es responsable por los daños sufri-

dos por algún visitante causados por actos criminales de un tercero, hay que evaluar, en primera instancia, si el establecimiento tiene un deber de ofrecer seguridad adicional a la que ofrecen las agencias de seguridad pública para garantizar la seguridad de sus clientes.

Como *norma general*, no existe un deber de proteger a otras personas de actos criminales de terceros. No obstante, existen situaciones en las que un demandado puede responder por dichos actos. Así, hemos sostenido que

> ... *existen ciertas actividades específicas que conllevan un deber especial de vigilancia, cuidado y protección de quien las lleve a cabo hacia el público en general o hacia ciertas personas en particular. Esta responsabilidad, que genera un deber de cuidado mayor del exigible a una persona cualquiera, se fundamenta en las circunstancias de la situación —entiéndase, el tiempo, el lugar y las personas— y en las exigencias de la obligación particular en la que se sitúan los involucrados.* (Énfasis nuestro.)[5]

Amparados en esta premisa, a través de los años hemos resuelto, *a manera de excepción*, que los hoteles, los hospitales y las universidades tienen una relación particular con sus huéspedes, pacientes y estudiantes, respectivamente, que los obliga a ofrecerles un grado de seguridad adecuado y razonable que procure garantizar su bienestar. Véanse: *Pabón Escabí v. Axtmayer*, 90 D.P.R. 20 (1964) (sobre los hoteles); *Hernández v. La Capital*, ante (sobre los hospitales); *Elba A.B.M. v. U.P.R.*, ante (sobre las universidades). Por último, *y de particular importancia para el caso de autos*, en *J.A.D.M. v. Centro Com. Plaza Carolina*, ante, extendimos, también a manera de excepción, dicha responsabilidad a los centros comerciales regionales.

Como vemos, a través de los años este Tribunal ha ido ampliando el universo de entidades que deben hacer algo

---

[5] *Administrador v. ANR*, 163 D.P.R. 48, 60 (2004), citando a *Ramírez v. E.L.A.*, 140 D.P.R. 385, 394–395 (1996).

más que confiar en la capacidad de las agencias de seguridad del Estado para proteger a sus visitantes. Hoy nos corresponde evaluar si debemos imponerle dicha responsabilidad a un establecimiento comercial que no cualifica como centro comercial regional.([6]) Veamos.

## II

En su primer señalamiento de error, el apelante cuestiona la interpretación que le dio el foro apelativo intermedio a nuestra opinión en *J.A.D.M. v. Centro Com. Plaza Carolina*, ante. Alega que el mencionado foro erró al resolver que en dicho caso dispusimos que los únicos establecimientos comerciales que tienen el deber de ofrecer seguridad adecuada y razonable a sus clientes son los centros comerciales regionales. *Tiene razón.*

Como ya mencionamos, en *J.A.D.M. v. Centro Com. Plaza Carolina*, ante, establecimos, *a manera de excepción*, que los centros comerciales regionales pueden ser responsables por los daños sufridos por sus clientes a consecuencia de actos criminales de terceros ocurridos en sus instalaciones. Asimismo, dispusimos que para poder imponerles responsabilidad tiene que haber una violación del deber de proveer adecuada y razonable vigilancia. A esos efectos, expresamos que dicho deber *dependerá de la naturaleza de la actividad comercial llevada a cabo y de la naturaleza de los actos delictivos.* Íd., pág. 801.

Amparado en el mencionado caso, Supermercado Grande alegó que no tiene el aludido deber de vigilancia, ya que no es un centro comercial regional. No obstante, un análisis responsable y sosegado de nuestra opinión nos obliga a diferir de su posición.

---

([6]) Es preciso señalar que es un hecho estipulado por las partes que el Supermercado Grande en controversia no está ubicado en un centro comercial regional.

En *J.A.D.M. v. Centro Com. Plaza Carolina*, ante, al atender la controversia específica allí involucrada, expresamos lo siguiente: "Hoy nos toca resolver, también *a manera de excepción, si un centro comercial regional* (shopping center) *podría ser responsable por los daños intencionales causados a las personas que frecuentan dicho centro por la conducta criminal intencional de un tercero.*" (Énfasis nuestro.) Íd., pág. 786.

*Esto demuestra que el análisis allí expuesto estuvo dirigido, únicamente, a evaluar si los centros comerciales regionales tenían el referido deber.* Resulta claro, entonces, que en dicho caso *no* dilucidamos —*por no estar ante nuestra consideración*— si otro tipo de establecimiento comercial de menor escala podría tener el mencionado deber. Destacamos, además, que en ningún lugar de la referida opinión diferenciamos —a los efectos de imponer responsabilidad— a los centros comerciales regionales de otro tipo de establecimiento. Dicho de otra manera, *no liberamos de responsabilidad ni le conferimos inmunidad —ante actos criminales de terceros— a los establecimientos comerciales que no cumplieran con las características de los centros comerciales regionales.*

De otra parte, y además de lo resuelto en *J.A.D.M. v. Centro Com. Plaza Carolina*, ante, somos del criterio de que no existe fundamento alguno que apoye una diferenciación entre los centros comerciales regionales y otros establecimientos comerciales a la hora de imponer responsabilidad. *El factor del tamaño y de la clasificación del establecimiento no debe ser determinante en el análisis de responsabilidad.* Resaltamos que los diferentes comentaristas o tratadistas que se han expresado en torno al tema lo hacen sin establecer diferencia alguna en cuanto al tipo o tamaño del establecimiento comercial que podrá estar sujeto a la mencionada responsabilidad y utilizan términos generales como "business", "business property", "occupier-owner", "commercial premises", etc. Véanse, en-

tre otros: G. Weissenberger, *The Law of Premises Liability*, 3ra ed., Cincinnati, Anderson Publishing Co., 2001; R.L. Cherry, Jr., *Liability of Business Property Owners for Injury to Customers in Parking Lots by Criminal Attacks From Third Parties*, 13 Real Est. L.J. 141 (1984); N.J. Landau y E.C. Martin, *Premises Liability Law and Practice*, Nueva Jersey, Ed. Matthew-Bender, 2005, Vol. 1, Cap. 4.([7])

Por su especial pertinencia para la interrogante que tenemos ante nuestra consideración, traemos a colación las siguientes expresiones del reputado tratadista, Dan B. Dobbs, respecto a la posible responsabilidad de los comercios, a saber: "The rule today is usually generalized to include *all landowners who open their land to the public for business* and to require them to use reasonable care even to protect against criminal acts of third persons." (Énfasis nuestro.) D.B. Dobbs, *The Law of Torts*, West Group, 2001, Vol. 2, Sec. 324, pág. 876.

Somos conscientes de que lo resuelto hoy podría afectar tanto a los denominados negocios "grandes" como a los "pequeños". *Sin embargo, aclaramos y enfatizamos que la determinación de responsabilidad y de la adecuacidad de las medidas de seguridad tomadas dependerá de una evaluación de la totalidad de las circunstancias, caso a caso.* Después de todo, el grado de cuidado que debe tener un propietario de un establecimiento comercial variará de acuerdo con la naturaleza del negocio y de sus instalaciones.

---

([7]) De igual forma, existe vasta jurisprudencia estatal que ha establecido que establecimientos tales como restaurantes, bares, supermercados, cementerios o tiendas de conveniencia ubicados fuera de centros comerciales tienen el deber de ofrecer un *grado razonable de seguridad* a sus clientes mientras éstos estén en sus instalaciones. A manera de ejemplo, véanse: *Gayta v. Laurel Grove Cementery Co.*, 731 A.2d 1245 (N.J. 1998); *Clohesy v. Food Circus Supermkts.*, 694 A.2d 1017 (N.J. 1997); *Romaguera v. Piccadilly Cafeterias, Inc.*, 648 So.2d 1000 (La. 1994); *Polk v. Rhinestone Wrangler*, 774 S.W.2d 799 (Tex. 1989); *Marshall v. David's Food Store*, 515 N.E.2d 134 (Ill. 1987); *Donaldson v. Olympic Health Spa, Inc.*, 333 S.E.2d 98 (Ga. 1985); *Butler v. Acme Markets, Inc.*, 445 A.2d 1141 (N.J. 1982); *Kelly v. Retzer & Retzer, Inc.*, 417 So.2d 556 (Miss. 1982); *Daily v. K-Mart Corp.*, 458 N.E.2d 471 (Ohio 1981); *Atamian v. Suprmarkets General Corp.*, 369 A.2d 38 (N.J. 1976).

En conclusión, lo *determinante* al momento de evaluar si un establecimiento comercial tiene el deber de ofrecer seguridad adecuada y razonable a sus clientes y visitantes *no* es el tamaño *ni* la clasificación del establecimiento. *Lo preciso será analizar la totalidad de las circunstancias del caso, en particular*: (1) la naturaleza del establecimiento comercial y de las actividades que allí se llevan a cabo; (2) la naturaleza de la actividad criminal que se ha registrado y se registra en las instalaciones y en el área donde está ubicado el establecimiento, y (3) las medidas de seguridad existentes en éste. *J.A.D.M. v. Centro Com. Plaza Carolina*, ante.

## III

Habiendo expresado que Supermercado Grande no se libera de responsabilidad por el mero hecho de no ser un centro comercial regional, nos corresponde analizar el segundo y el tercer señalamiento de error. Los evaluaremos en conjunto por estar íntimamente relacionados.

En esencia, el apelante aduce que erró el foro apelativo intermedio al no imponerle responsabilidad a Supermercado Grande por entender que éste no tenía un deber de cuidado para con sus clientes y que los actos criminales a los que fue objeto no fueron previsibles. *Nuevamente, le asiste la razón.*

Para resolver esta controversia debemos determinar, en primera instancia, si Supermercado Grande —al tenor de lo explicado en la sección anterior— *debía* ofrecer a sus clientes algún grado de seguridad, adecuado y razonable, que pudiera evitar que éstos fueran víctimas de actos criminales intencionales perpetrados por terceros. De esto ser así, debemos evaluar si los hechos en los cuales el apelante resultó lastimado eran previsibles y si la seguridad ofrecida por Supermercado Grande era razonable y adecuada.

A.  En *J.A.D.M. v. Centro Com. Plaza Carolina*, ante,

recurrimos, por vía del derecho comparado, al derecho de daños de Estados Unidos, que ha abordado la cuestión que hoy nos ocupa. En particular, se ha señalado, en cuanto a la responsabilidad de los establecimientos comerciales por los actos de terceros o de animales, lo siguiente:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
> (a) discover that such acts are being done or are likely to be done, or
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it. 2 *Restatement of the Law (Second) of Torts* Sec. 344 (1965).

Asimismo, y en cuanto a la determinación de si existe un deber de vigilar las instalaciones del establecimiento, en la aludida sección se sostiene:

> *f. Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. *If the place or character of his business, or his past experience, is such that he reasonably anticipates careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.* (Énfasis nuestro.) Restatement of the Law (Second) of Torts, supra, Sec. 344(f).

Al interpretar dicha sección, en *J.A.D.M. v. Centro Com. Plaza Carolina*, ante, *concluimos* que el deber de proveer seguridad adecuada y razonable se puede *deducir* o *inferir* cuando el propietario del establecimiento tiene, o

debe tener, conocimiento de que han ocurrido actos delictivos previos en el área bajo su dominio y control, o de que existen circunstancias que hagan que una persona prudente y razonable pueda anticipar la ocurrencia de tales actos. Íd., pág. 798.

En el caso de autos, surge del expediente que el Supermercado Grande de Santa Isabel —*el cual era el único establecimiento de su tipo que abría en horas de la noche en dicho pueblo*— es un establecimiento de ventas al detal que atrae un gran número de público a sus instalaciones. También se desprende que para la fecha de los hechos —*periodo prenavideño*— el aludido establecimiento tenía el *completo dominio del estacionamiento* que ubica en sus instalaciones *y que éste carecía de alumbrado adecuado y de guardias de seguridad*. Por último, es un hecho estipulado por las partes que para la fecha de los hechos parte del mencionado estacionamiento era usado para vender árboles de navidad, lo que demuestra actos del apelado Supermercado Grande dirigidos a aumentar tanto el flujo de personas en el lugar como los ingresos del negocio.

Además de lo anterior, el apelante presentó prueba en el juicio relativa a la incidencia criminal y a hechos delictivos ocurridos en las instalaciones y en las cercanías del Supermercado Grande. Respecto a dicha prueba el foro de instancia estimó probado que el personal de la Policía adscrito a Santa Isabel *no* era suficiente para cubrir las necesidades del pueblo. Asimismo, concluyó que durante el 1997 el nivel de criminalidad en el mencionado pueblo era alto, ya que subsistía una pandilla de criminales conocida como "los Martínez" —cuyo líder vivía en el mismo sector donde ubica el supermercado— y su centro de operaciones era el pueblo de Santa Isabel.

Respecto a hechos delictivos ocurridos en el referido lugar, se desprende de la sentencia emitida por el foro de instancia que durante el tiempo transcurrido entre los meses de febrero y noviembre de 1997 *ocurrieron ocho inci-*

*dentes de apropiaciones de vehículos de motor* en las periferias de Supermercado Grande. *De éstos, cinco ocurrieron en el estacionamiento de este comercio, dos en sus cercanías y uno en un solar yermo frente a éste.* De igual forma, surge del expediente que el 11 de octubre de 1997 —*cuarenta y siete días antes de los hechos del caso de autos*— el joven Néstor Marrero Delfí fue víctima de un "carjacking" en el estacionamiento del apelado y que *luego del incidente entró al Supermercado Grande, lo informó y de allí llamó a la policía.* Esta situación indudablemente demuestra que el Supermercado Grande *tenía conocimiento* de hechos delictivos previos —*de similar naturaleza*—[8] ocurridos en sus instalaciones con anterioridad al incidente en el que se vio involucrado el apelante.

En vista de lo anterior, es forzoso concluir que la naturaleza y actividad comercial de Supermercado Grande *sin lugar a dudas* crea el deber de ofrecer un grado de seguridad adecuado y razonable a sus clientes. Por un lado, es prácticamente el único establecimiento de esa índole en Santa Isabel y pueblos aledaños abierto en horas de la noche y, por otro, fomenta y utiliza al máximo sus instalaciones para obtener beneficio económico.

Asimismo, en cuanto a la incidencia criminal y a la previsibilidad de actos delictivos en las instalaciones del Supermercado Grande, el foro de instancia determinó correctamente que era *razonablemente previsible* la ocurrencia de sucesos delictivos intencionales de terceros que ocasionaran daños a los clientes o visitantes del referido supermercado; ello en vista de que éste conocía, o debía conocer, el alto nivel de delincuencia existente en el área donde ubica su establecimiento y de la ocurrencia de varios hurtos de vehículos y un "carjacking" en su propio estacionamiento.

Por los fundamentos antes expuestos, somos del criterio

---

[8] Vale la pena señalar que este "carjacking" tuvo el mismo modus operandi que el que ocupa hoy nuestra atención.

de que, *dadas las circunstancias particulares del caso de autos*, Supermercado Grande tenía y tiene el deber de ofrecer un grado de seguridad que proteja, *adecuada y razonablemente*, a sus clientes y visitantes. Debemos recordar que, después de todo, los establecimientos comerciales ofrecen estacionamiento a sus visitantes con el propósito de atraerlos. Por tal razón, no creemos que resulte irrazonable que se le exija a los propietarios de dichos establecimientos que tomen las medidas necesarias para garantizar la vida y la propiedad de sus visitantes.

En vista de ello, y según lo mencionado anteriormente, *debemos determinar si el apelado cumplió con dicho deber de proveer un grado razonable de seguridad.*

B. Como vimos, es norma reiterada que un establecimiento comercial no es garantizador absoluto de todos los daños que puedan sufrir sus clientes mientras estén en sus instalaciones. Por tal razón, y como mencionamos en *J.A.D.M. v. Centro Com. Plaza Carolina*, ante, el *mero hecho* de que ocurra un hecho delictivo en las instalaciones de un establecimiento comercial y de que éste tenga el deber de ofrecer algún grado de seguridad a sus clientes y visitantes, *de por sí no significa que automáticamente el establecimiento es responsable por los daños que pudieran ocurrir.* Para poder imponer responsabilidad *hay que evaluar la razonabilidad de las medidas de seguridad establecidas por el dueño del establecimiento.*

En el caso de autos, luego de un análisis exhaustivo del expediente ante nuestra consideración, *no* encontramos prueba alguna que demuestre la existencia de seguridad en dicho supermercado. *Por el contrario* —según los hechos *estipulados* por las partes— *no había guardias de seguridad en las instalaciones* y —según las determinaciones de hechos del foro primario— *no había un alumbrado adecuado en el lugar.* Asimismo, el foro primario *determinó que hubo ausencia de las más elementales medidas de seguridad,* situación que llama poderosamente la atención

en vista de que se trata de una *cadena* de supermercados con obvia capacidad económica para hacerlo.[9]

Por esto, no es correcto tratar la controversia ante nos como una relativa a la adecuacidad o no de las medidas de seguridad adoptadas por el apelado. Lo procedente es considerar el caso como de *falta absoluta* de medidas de seguridad de parte del Supermercado Grande. Dada esta situación, *no nos queda otra alternativa que resolver que Supermercados Grande, teniendo el deber de actuar de cierta manera, no lo hizo, por lo que incurrió en una omisión que puede acarrearle la imposición de responsabilidad.*

C. Para resolver si Supermercado Grande debe ser responsable por los daños sufridos por el apelante, *lo único que queda por determinar es si, de haberse provisto alguna medida de seguridad adecuada, se hubiera evitado el daño sufrido por el apelante.* Contestamos dicha interrogante *en la afirmativa.*

██ Como se sabe, la doctrina de daños y perjuicios extracontractuales tiene inmerso el principio de la causalidad adecuada. Esto es, la relación entre el daño y su autor, que a su vez indica "¿cuál sería la causa próxima del accidente?" *Negrón García v. Noriega Ortiz,* 117 D.P.R. 570, 575 (1986). De este modo, un daño podrá considerarse como el resultado probable y natural de un acto u omisión negligente, *si luego del suceso —mirándolo retrospectivamente— éste parece ser la consecuencia razonable y común de la acción u omisión de que se trate.* Véase: *Administrador v. ANR,* ante; *Montalvo v. Cruz,* ante, págs. 756–757.

██ En otras palabras, "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia

---

[9] Es por ello que resulta, cuando menos, sorprendente el hecho de que el recurrido Supermercados Grande incumpliera con dos resoluciones de este Tribunal mediante las cuales se le concedió términos para exponer su posición al respecto.

general". *Soc. de Gananciales v. Jeronimo Corp.*, 103 D.P.R. 127, 134 (1974), citando a J. Santos Briz, *Derecho de Daños*, Madrid, Ed. Rev. Der. Privado, 1963, pág. 215 *et seq*. Véanse, además: *López v. Dr. Cañizares*, 163 D.P.R. 119 (2004); *Elba A.B.M. v. U.P.R.*, ante, pág. 310; *Jiménez v. Peregrina Espinet*, 112 D.P.R. 700, 704 (1982). Así, para determinar cuál fue la causa del daño, el demandante tiene que probar que la omisión del demandado es la que *con mayor probabilidad* ocasionó el perjuicio reclamado.([10])

▮ Respecto a la controversia hoy ante nuestra consideración, hemos expresado que habrá responsabilidad por daños causados por actos criminales de terceros en situaciones en la que está involucrada, entre otras, *la relación entre el invitante y visitante de negocios* "sólo si el demandado es negligente en no tomar precauciones contra el posible criminal; *esto es, si el riesgo previsible es de dimensión irrazonable comparado con el peso de tomarlas*". (Énfasis nuestro.) *Estremera v. Inmobiliaria Rac. Inc.*, 109 D.P.R. 852, 858 esc. 6 (1980).

A nuestro juicio, en el caso de autos ha quedado demostrado que la *total ausencia de medidas de seguridad* en las instalaciones de Supermercado Grande fue la causa que *con mayor probabilidad* permitió la ocurrencia del daño sufrido por el apelante. Quedó establecido que el apelado, *conociendo o debiendo conocer de la actividad criminal en el área y de hechos delictivos previos ocurridos en sus instalaciones*, se cruzó de brazos y *no* estableció medida de seguridad alguna que *previniera o intentara prevenir* la repetición de este tipo de sucesos en su establecimiento. *Cier-*

---

([10]) En cuanto a la causalidad en este tipo de casos, hemos expresado que "la difícil determinación de cuándo existe un nexo causal entre el daño producido por un acto delictivo de un tercero y la omisión de cumplir con la obligación de tomar precauciones, medidas de seguridad y protección, no puede 'resolverse nunca de una manera plenamente satisfactoria mediante reglas abstractas, sino que en los casos de duda ha de resolverse por el juez según su libre convicción, ponderando todas las circunstancias'. J. Castán Tobeñas, *Derecho Civil español, común y foral*, 10ma ed., Madrid, Ed. Reus, 1967, T. 3, pág. 195." *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294, 310–311 (1990).

*tamente, no es descabellado inferir que alguna medida de seguridad tomada por el apelado hubiera servido como disuasivo para los delincuentes.* En conclusión, dicho comportamiento fue negligente y totalmente incompatible con la conducta que debe esperarse de la figura de la persona prudente y razonable. En vista de ello, no hay duda de que se cometieron los señalamientos de error segundo y tercero.

## IV

En su último señalamiento de error, el apelante sostiene que el foro primario erró al no hacer una determinación de temeridad en contra del Supermercado Grande.

Es norma reiterada que la imposición de honorarios de abogado sólo procede cuando una parte ha actuado con temeridad o frivolidad. Al respecto hemos expresado que el propósito de la determinación de temeridad y la eventual imposición de honorarios de abogado es "penalizar '... al litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente a asumir las molestias, gastos, trabajo e inconvenientes de un pleito' ". *O.E.G. v. Román*, 159 D.P.R. 401, 418 (2003), citando a *Domínguez v. GA Life*, 157 D.P.R. 690, 706 (2002).

En otras palabras, la conducta temeraria que acarrea la imposición de honorarios de abogado se refiere a una " 'actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia' ". *P.R. Oil v. Dayco*, 164 D.P.R. 486, 510–511 (2005). Véase H. Sánchez Martínez, *Rebelde sin Costas*, 4 (Núm. 2) Boletín Judicial 14 (1982).

De otra parte, la determinación de si una parte

ha actuado o no con temeridad descansa en la *sana discreción* del tribunal. Por lo cual, los tribunales revisores intervendrán, *únicamente*, cuando surja de tal actuación un claro abuso de discreción. *P.R. Oil v. Dayco*, ante.

Reiteradamente hemos resuelto que *no* existe temeridad *cuando lo que se plantea ante el tribunal de instancia son planteamientos complejos y novedosos que no han sido resueltos en nuestra jurisdicción.* "Tampoco existe temeridad en aquellos casos en que el litigante actúa de acuerdo a la *apreciación errónea de una cuestión de derecho y no hay precedentes establecidos sobre la cuestión, Cabanillas v. Gelpí*, 65 D.P.R. 945, 949 (1946), o cuando existe alguna desavenencia honesta en cuanto a quién favorece el derecho aplicable a los hechos del caso". *Cándido, Inc. v. Universal Ins. Co.*, 141 D.P.R. 900, 936 (1996). Véanse: *Elba A.B.M. v. U.P.R.*, ante; *Santos Bermúdez v. Texaco P.R., Inc.*, 123 D.P.R. 351 (1989); *Santaella Negrón v. Licari*, 83 D.P.R. 887, 903–904 (1961).

Como hemos podido apreciar, el caso de autos presenta una *cuestión novedosa* que no había sido resuelta por este Tribunal anteriormente. Nunca habíamos determinado el alcance de nuestras expresiones en *J.A.D.M. v. Centro Com. Plaza Carolina*, ante, determinación que hemos tenido la oportunidad de hacer hoy debido a la controversia surgida entre las partes de epígrafe. Por tal razón, determinamos que Supermercado Grande *no* incurrió en conducta que pueda ser considerada como temeraria. Por el contrario, su actuación en todo momento ha sido honesta y fundamentada en una controversia real. El hecho de que su interpretación del Derecho fuera errónea *no* acarrea, de por sí, la imposición de honorarios de abogado.

Por tal razón, resolvemos que actuó correctamente el foro de instancia al rehusar determinar que Supermercado Grande fue temerario en la tramitación del presente litigio.

## V

En mérito de lo antes expuesto, *se revoca la sentencia emitida en el presente caso por el Tribunal de Apelaciones y se reinstala la emitida por el Tribunal de Primera Instancia el 8 de abril de 2003.*

*Se dictará sentencia de conformidad.*

La Juez Asociada Señora Rodríguez Rodríguez concurrió con el resultado sin opinión escrita.