*765 TEXTO COMPLETO DE LA SENTENCIA
La Cumbre S.E. y el arquitecto Segundo Cardona nos solicitan que expidamos el auto de certiorari y revoquemos la orden del Tribunal de Primera Instancia, Sala Superior de Bayamón, que declaró no ha lugar su solicitud de sentencia sumaria y pospuso la cualificación de un nuevo perito anunciado por la parte demandante y recurrida hasta la fecha del juicio, pautado para junio de 2010.
*766 Por los fundamentos que exponemos a continuación, expedimos el auto solicitado y revocamos el dictamen recurrido. Veamos los antecedentes procesales que justifican esta determinación.
I
Los esposos Miguel de Jesús Ramos y Gladys Rodríguez Ríos (en adelante los esposos De Jesús-Rodríguez) compraron una propiedad sita en el Barrio Frailes, en Guaynabo, a Jesús Montano Valea y Daisy Rodríguez Meléndez (en adelante los esposos Montano-Rodríguez) el 24 de marzo de 2006. Los esposos De Jesús-Rodríguez se mudaron a la residencia luego de hacerle varios arreglos. Durante el proceso de remodelación descubrieron varios vicios de construcción y defectos, entre ellos, los de un muro de contención ubicado en la parte posterior de la propiedad.
A consecuencia de estos hallazgos, los recurridos presentaron una demanda contra los esposos Montano-Rodríguez en la que alegaron, en síntesis, que la propiedad que éstos les vendieron tenía vicios de construcción y que hubo dolo en la compraventa de la residencia. [1] Además, presentaron otra acción de daños y perjuicios contra La Cumbre S.E. y el Ingeniero Segundo Cardona. En cuanto a estos últimos, alegaron que la construcción del proyecto Ciudadela II le ocasionó daños al muro que colinda con la construcción del nuevo desarrollo residencial.
Luego de varios trámites procesales, La Cumbre presentó una solicitud de sentencia sumaria parcial a su favor. El 22 de enero de 2008, el Tribunal de Primera Instancia la declaró no ha lugar por entender que en el caso habían controversias de hechos.
Antes de denegar la solicitud de sentencia sumaria, durante una vista sobre el estado de los procedimientos que se celebró el 25 de octubre de 2007, las partes acordaron que La Cumbre repararía el muro a su costo y los esposos De Jesús-Rodríguez y Montano-Rodríguez pagarían una fianza que garantizaría la inversión de resultar La Cumbre favorecido en la determinación final del pleito. [2] Ambas partes cumplieron el acuerdo: la parte recurrida pagó la fianza y la parte peticionaria reparó el muro. [3]
El pleito siguió su curso, y el 6 de abril de 2009, La Cumbre presentó dos mociones ante el Tribunal de Primera Instancia: una Segunda Solicitud de Sentencia Sumaria; una Moción Informativa y Solicitud para que no se Autorice Nuevo Perito No Cualificado.
Mediante la moción de sentencia sumaria, La Cumbre solicitó que se desestimara la demanda en su contra por insuficiencia de la prueba. Alegó que el primer perito anunciado por los esposos De Jesús-Rodríguez, el ingeniero Dennis González, concluyó en su informe que las grietas existentes en el muro se debían al “mal diseño, mala construcción y/o falta de compactación de los terrenos de los Montano”. Este perito señaló, además, que los cortes y vibraciones ocasionadas por la construcción del proyecto Ciudadela II empeoraban la condición del muro y que la responsabilidad de esos daños era de los dueños anteriores y parcialmente del Arquitecto Cardona.
La Cumbre señaló que el Ingeniero González fue depuesto el 9 de julio de 2008 y en la deposición admitió que no había realizado pruebas científicas para llegar a esas conclusiones. La Cumbre unió a la moción de sentencia sumaria los informes de sus dos peritos, los que concluyeron que los ruidos ocasionados por el desarrollo Ciudadela II no produjeron vibraciones que causaran grietas en el muro de la casa de los esposos De Jesús-Rodríguez. Los dos peritos de La Cumbre presentaron sus hallazgos y opiniones luego de realizar estudios científicos que medían la producción de vibraciones, si alguna, ocasionadas por los proyectos de construcción. Incluso, el perito de los codemandados, los esposos Montano-Rodríguez, también concluyó que no encontró evidencia que demostrara que la construcción del proyecto Ciudadela II causara las nuevas grietas en el muro.
*767 En cuanto al escrito titulado Moción Informativa y Solicitud para que no se Autorice Nuevo Perito No Cualificado, La Cumbre señaló que los esposos De Jesús-Rodríguez le enviaron una carta el 26 de marzo de 2009 en la cual le notificaban que presentarían un nuevo perito, el señor José Valcárcel de Atlantic’s Pool. Además, le incluyeron una cotización del señor Valcárcel para la reparación de los daños que sufrió la piscina como consecuencia de la construcción que se realizaba en Ciudadela II.
La Cumbre se opuso a que se admitiera al señor Valcárcel como perito, porque no es hasta dos años después de presentada la demanda que los esposos De Jesús-Rodríguez le notifican una cotización para arreglar la piscina. Además, señaló que era improcedente el que se considerara como perito a una persona que no se ha cualificado como tal.
Luego de que las partes expresaran por escrito sus argumentos, el Tribunal de Primera Instancia dictó una orden el 14 de julio de 2009 en la cual determinó que la controversia sobre el nuevo perito anunciado por los esposos De Jesús-Rodríguez sería resuelta durante el juicio que estaba pautado para junio de 2010. El tribunal a quo declaró no ha lugar la solicitud de sentencia sumaria “en estos momentos”.
Inconforme, La Cumbre, S.E y el arquitecto Segundo Cardona comparecen ante nosotros y alegan, en síntesis, que el Tribunal de Primera Instancia erró al postergar por aproximadamente un año la cualificación del nuevo perito anunciado por los demandantes y al declarar “no ha lugar en estos momentos” la segunda solicitud de sentencia sumaria de los recurrentes, en ausencia de testimonio pericial que controvirtiera el de los peritos de La Cumbre, y ante sus propias determinaciones de hechos vertidas en la sentencia sumaria parcial dictada el 8 de mayo de 2009. [4]
Ambas cuestiones están estrechamente conectadas, pues la decisión sobre la cualidad de la prueba pericial de los demandantes ha de determinar si procede o no la sentencia sumaria por insuficiencia de la prueba. Reseñemos las normas jurídicas que gobiernan ambos planteamientos antes de resolver esa cuestión.
II
A
En la adjudicación de ciertas reclamaciones, el conocimiento científico, técnico o especializado que puedan aportar los expertos en las materias en controversia puede ser de gran utilidad para el juzgador. Por esto, la Regla 52 de Evidencia, 32 L.P.R.A. Ap. IV, R. 52, permite que un testigo capacitado testifique, a manera de opinión o de alguna otra forma, como perito en relación con el asunto en disputa. Por su parte, la Regla 53 (A) de Evidencia dispone lo siguiente sobre este tipo de testimonio:
“a) Toda persona está cualificada para declarar como testigo pericial si posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficientes para cualificarla como un experto o perito en el asunto sobre el cual habrá de prestar testimonio. Si hubiere objeción de parte, dicho especial conocimiento, destreza, adiestramiento o instrucción, deberán ser probados antes de que el testigo pueda declarar como perito.”
32 L.P.R.A. Ap. IV, R. 53(a). Énfasis nuestro.
Esta regla adopta una norma liberal sobre la capacidad para declarar como perito. El peritaje puede ser producto de la educación formal o de conocimientos adquiridos por la experiencia. Por lo tanto, el perito no tiene que ser un experto en el sentido estricto, ni estar debidamente licenciado o autorizado a ejercer la profesión sobre el asunto que habrá de declarar. Dye-Tex P.R., Inc. v. Royal Ins. Co., P. R., 150 D.P.R. 658, 663 (2000).
*768 Es decir, la carencia de un título académico o certificado de especialidad afecta el peso de la prueba pericial, pero no la cualificación del perito. Basta que el testigo posea especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficiente para que pueda servir como experto en un juicio. No obstante, si bien es cierto que existe liberalidad en cuanto a la capacidad pericial, esto no significa que la mayor o menor competencia del perito sea irrelevante para apreciar su valor probatorio. R. Emmanuelli Jiménez, Prontuario de Derecho Probatorio Puertorriqueño 355 (Mayagüez 1994).
También es importante destacar que le compete al tribunal a quo permitir o no la presentación de evidencia de naturaleza pericial y limitar el número de peritos que una parte pueda presentar, a los fines de mantener el control de los procedimientos e impedir demoras injustificadas, siempre que mantenga como norte la búsqueda de la verdad, que, en todo caso, es la que va a sostener el remedio solicitado. Lluch v. España Service Sta., 117 D.P.R. 729, 745-746 (1986). No obstante, esta discreción “no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". Bco. Popular de P.R. v. Mun. de Aguadilla, 144 D.P.R. 651, 658 (1997); Pueblo v. Sánchez González, 90 D.P.R. 197, 200 (1964). Por lo tanto, la discreción debe “nutrirse de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa o limitación alguna...”. Santa Aponte v. Srio. del Senado, 105 D.P.R. 750, 770 (1977).
B
La sentencia sumaria es un mecanismo extraordinario y discrecional utilizado por un foro adjudicativo para aligerar la tramitación de un caso sin la celebración del juicio en su fondo. Su propósito principal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, ya que lo único que resta es dirimir una controversia de derecho. Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36; Vera v. Bravo, 161 D.P.R. 308, 331-332 (2004). Tal norma fue reiterada en Freire v. Vista Rent, res. el 9 de noviembre de 2006, 169 D.P.R._(2006), 2006 J.T.S. 172, a la pág. 451.
Al determinar si la Regla 36 de las de Procedimiento Civil es el vehículo apropiado para disponer de una demanda, el Tribunal Supremo ha señalado que el principio rector debe ser el sabio discernimiento del juzgador, porque ese recurso, mal utilizado, puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley. Cruz v. Sánchez, res. el 8 de noviembre de 2007, 172 D.P.R._ (2007), 2007 JTS 203; Ortiz v. Nationwide Mutual Ins. Co., 158 D.P.R. 775, 780 (2003).
Por lo tanto, “[e]l objetivo de aligerar la tramitación de un caso no puede derrotar el principio fundamental de todo proceso ante un tribunal: alcanzar una solución justa.” PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 912 (1994); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272, 279 (1990).
La Regla 36.2 de las de Procedimiento Civil permite que una parte, en cualquier momento, pueda presentar una moción, basada o no en declaraciones juradas, para que se dicte la sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Por su parte, la Regla 36.3 de las de Procedimiento Civil establece que se podrá dictar sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demuestran que no existe controversia real sustancial en cuanto a algún hecho medular y que, como cuestión de derecho, debe dictarse la sentencia sumaria a favor de la parte promovente. González Rivera v. Multiventas, 165 D.P.R. 873, 888 (2005); Vera v. Bravo, 161 D.P.R., a las págs. 332-333.; Jusino Figueroa v. Walgreens, 155 D.P.R. 560, 576-577 (2001).
Al dictar la sentencia sumaria, el juzgador debe analizar los documentos que acompañan la moción del promovente, los documentos unidos a la moción en oposición y aquellos que obren en el expediente del Tribunal. Además, debe determinar si el oponente controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido controvertidas o refutadas de forma alguna por los documentos que obran en el *769 expediente judicial. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R., a las págs. 913-914; Medina v. M.S. & D. Química P.R., Inc., 135 D.P.R. 716, 727 (1994).
En caso de dudas sobre la existencia de una controversia de hechos, éstas deben resolverse en contra de la parte que solicita la sentencia sumaria, ya que este mecanismo procesal no permite que el tribunal dirima asuntos de credibilidad. Por lo tanto, sólo procederá una solicitud de sentencia sumaria "en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes". PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R., a la pág. 912; Corp. Presiding Bishop v. Purcell, 117 D.P.R. 714, 720-721 (1986); Roth v. Lugo, 87 D.P.R. 386, 397 (1963).
A pesar de los beneficios procesales que ofrece el mecanismo de sentencia sumaria, no se aconseja que se utilice para resolver ciertos tipos de controversias, ya que difícilmente se puede reunir ante el tribunal toda la verdad de los hechos en declaraciones juradas o deposiciones. Por ejemplo, el tribunal sentenciador, en el sano ejercicio de su discreción, debe abstenerse de resolver mediante el mecanismo de sentencia sumaria controversias en las que subyacen elementos subjetivos de intención, propósitos mentales o negligencia, y cuando el factor credibilidad sea esencial para dirimir los conflictos de la prueba. Rivera Rodríguez v. Rivera Reyes, 168 D.P.R. 193, 211-212 (2006); Vera v. Bravo, 161 D.P.R., a la pág. 750; PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R., a las págs. 913-914; Corp. Presiding Bishop v. Purcell, 117 D.P.R., a las págs. 722-723.
En resumen, un tribunal no debe dictar sentencia sumaria cuando: (1) existen hechos materiales controvertidos, (2) hay alegaciones afirmativas en la demanda que no han sido refutadas, (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material, o (4) como cuestión de derecho no procede. Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R., a la pág. 279; Corp. Presiding Bishop v. Purcell, 117 D.P.R., a las págs. 722-723.
C
En cuanto a la posibilidad de dictar una sentencia sumaria que disponga del elemento de negligencia en un caso de daños y perjuicios, hemos indicado que las controversias sobre negligencia no deben, de ordinario, resolverse mediante este apremio procesal, sino en un juicio plenario. A manera de excepción, se puede resolver este tipo de controversia mediante sentencia sumaria cuando “el récord demuestre que no hay controversia genuina sobre el hecho de la negligencia”. Lasanta Piñero v. Retío, Inc., 100 D.P.R. 694, 698 (1972); González Vda. de Viera v. Tribunal Superior, 93 D.P.R. 503, 508 (1966).
El Artículo 1802 del Código Civil claramente establece que aquella persona que por su acción u omisión causa daño a otro, interviniendo culpa o negligencia, estará obligada a reparar el daño. 31 L.P.R.A. see. 5141. A base de este precepto legal, nuestro ordenamiento jurídico le impone responsabilidad por daños y perjuicios a una parte cuando el perjudicado demuestra mediante preponderancia de la prueba los siguientes elementos que definen esta causa de acción: 1) que ha habido una acción u omisión de una parte; 2) que se ha producido un daño en otra; y 3) que existe un nexo causal entre la acción u omisión y el daño sufrido. García v. E.L.A., 163 D.P.R. 800, 809 (2005); Toro Aponte v. E.L.A., 142 D.P.R. 464, 472-473 (1997); Vélez Rodríguez v. Amaro Cora, 138 D.P.R. 182, 189 (1995).
En nuestra jurisdicción rige la doctrina de causalidad adecuada. Esta doctrina establece que un daño podrá considerarse como el resultado probable y natural de un acto u omisión si luego del suceso, mirándolo retrospectivamente, el daño parece ser la consecuencia razonable y común de la acción u omisión de que se trate. Santiago Colón v. Supermercados Grande, 166 D.P.R. 796, 818 (2006); Bacó v. ANR Construction Corp., 163 D.P.R. 48, 61 (2004); Jiménez v. Pelegrina Espinet, 112 D.P.R. 700, 709 (1982); Soc. de Gananciales v. Jerónimo Corp., 103 D.P.R. 127, 134 (1974).
*770 Por lo tanto, no es causa toda condición sin la cual no se hubiese producido el resultado, sino aquella que ordinariamente lo produce según la experiencia general. Así, para determinar cuál fue la causa del daño, el demandante tiene que probar que la omisión o actuación del demandado fue la que con mayor probabilidad ocasionó el perjuicio reclamado. Santiago Colón v. Supermercados Grande, 166 D.P.R. a las págs. 818-819; Admor. F.S.E. v. Almacén Ramón Rosa, 151 D.P.R. 711, 725 (2000); Arroyo López v. E.L.A., 126 D.P.R. 682, 686 (1990); Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702, 710 (1990).
De ordinario, para demostrar al tribunal los elementos que hemos señalado, el perjudicado necesita presentar prueba preponderante que, después de admitida y aquilatada, permita al juzgador concluir que el daño alegado ocurrió y que el acto u omisión imputado al demandado es el que con probabilidad lo ocasionó. Esto se hace generalmente en una vista plenaria. J.A.D.M. v. Centro Com. Plaza Carolina, 132 D.P.R. 785, 803 (1993). Por eso no se favorece la disposición sumaria de los casos en los que se ventila la responsabilidad civil de una parte si el resultado depende de lo que pueda probar una parte durante el juicio.
D
Atinente al caso de autos, junto a la sentencia sumaria tradicional, existe una segunda modalidad de solicitud de sentencia sumaria, aplicable cuando una de las partes alega que su adversario no cuenta con suficiente evidencia para prevalecer en el juicio. La llamada sentencia sumaria por insuficiencia de prueba fue reconocida por el Tribunal Supremo en Medina v. M.S. & D. Química P.R., Inc., 135 D.P.R. 716 (1994). Según esta decisión, después de que las partes hayan realizado un adecuado y apropiado descubrimiento de prueba, la parte interesada puede presentar una moción de sentencia sumaria en la que alegue que su adversario no cuenta con suficiente evidencia para, al menos, probar un elemento esencial e indispensable de su reclamación. La moción puede acompañarse “de todos los documentos relacionados con el descubrimiento de prueba o sin documento alguno, si éstos obran en el expediente del tribunal. [...] También puede acompañar su moción con evidencia afirmativa, no necesariamente obtenida mediante la utilización de los mecanismos de descubrimiento de prueba, que niegue algún elemento esencial de la reclamación de la parte promovida.” Véase, Medina v. M.S. & D. Química P.R., Inc., 135 D.P.R., a la pág. 732.
Advertimos, sin embargo, que la jurisprudencia citada requiere que el promovente de la moción de sentencia sumaria por insuficiencia de prueba alegue y demuestre todos los elementos requeridos para que prevalezca una moción de sentencia sumaria “tradicional”, más el elemento adicional de insuficiencia de la prueba. Esto se debe a que “[a] la modalidad de sentencia sumaria por insuficiencia de la prueba le aplican todas las normas y principios que tradicionalmente hemos indicado deben utilizarse por los tribunales al entender en una moción de sentencia sumaria.” Medina v. M.S. & D. Química P.R., Inc., 135 D.P.R., a la pág. 734. Si existiera duda sobre si hay prueba suficiente o no en tomo a alguna controversia de hecho relevante, los tribunales deben denegar la solicitud de sentencia sumaria por ese fundamento. Id.
En síntesis, bajo esta segunda modalidad, el promovente tiene el peso afirmativo de demostrar que las partes han realizado ese descubrimiento de prueba completo, adecuado y apropiado, es decir, que ha explorado concienzudamente la posibilidad de la existencia de otra evidencia admisible para probar el caso. Además, tiene que persuadir al juzgador de los hechos de: (1) que no es necesario celebrar una vista evidenciaría, (2) que su adversario no cuenta con suficiente evidencia para probar al menos un hecho esencial de su reclamación, (3) por lo que procede la desestimación de la reclamación como cuestión de derecho. Véase, Medina v. M.S. & D. Química P.R., Inc., 135 D.P.R. a las págs. 733-734.
En este último caso, el Tribunal Supremo completó las normas que regulan esta modalidad de la sentencia sumaria por insuficiencia de la prueba con estos pronunciamientos adicionales:
“[La parte promovente] tiene que poner al tribunal en posición de evaluar la [adecuación] del descubrimiento de prueba que realizó. Una simple alegación en la cual se concluya que no existe evidencia *771 suficiente para probar el caso, no basta para apoyar una moción de sentencia sumaria de esta naturaleza. Tampoco se considerará adecuado el descubrimiento de prueba cuando un análisis de los documentos sometidos con la moción, con la oposición y aquellos que constan en el récord, refleje que la parte promovente ha dejado de auscultar alguna información que le pudiera haber conducido a obtener prueba admisible. Por ejemplo, ha dejado de deponer o de someter un interrogatorio con relación a un testigo que pueda proveer testimonio relevante. Bajo estas circunstancias, hay que concluir que no ha realizado un descubrimiento completo y adecuado, ya que el tribunal no puede determinar, con certeza, que la parte promovida no cuenta con evidencia suficiente para probar su caso.”
Medina v. M.S. & D. Química P.R., Inc., 135 D.P.R. a las págs. 733-734.
De la parte promovida, se espera el siguiente comportamiento:
“[P]ara derrotar una moción de sentencia sumaria bajo la modalidad de la insuficiencia de la prueba, la parte promovida puede, entre otras cosas, presentar con su oposición prueba [...] que demuestre que existe evidencia para probar los elementos esenciales de su caso; o que hay prueba en el récord [...] que derrotaría la contención de insuficiencia del promovente; o que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado; o que éste, por su naturaleza, no es un caso que conviene se resuelva por el mecanismo expedito de la sentencia sumaria.”
Medina v. M.S. & D. Química P.R., Inc., 135 D.P.R. a la pág. 734.
E
Por último, como foro apelativo debemos utilizar los mismos criterios que el Tribunal de Primera Instancia al determinar si procede o no la sentencia sumaria solicitada. No obstante, al revisar la determinación del Tribunal de Primera Instancia, estamos limitados de dos maneras. Primero, sólo podemos considerar los documentos que se presentaron ante el foro primario. Esto quiere decir que las partes no pueden añadir en apelación exhibits, deposiciones o affidávits que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. En segundo lugar, sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Estamos impedidos de adjudicar los hechos materiales y esenciales en disputa, ya que esto le corresponde al foro de primera instancia. Nissen v. Genthaller, res. el 7 de noviembre de 2007, 172 D.P.R._(2007), 2007 J.T.S. 202; Vera Morales v. Bravo Colón, supra, pág. 335.
ni
Luego de reseñar las normas de derecho aplicables al caso ante nuestra consideración, procederemos a resolver los señalamientos de error presentados por La Cumbre. De lo anteriormente discutido se puede colegir que para resolver la controversia sobre si procede la solicitud de sentencia sumaria presentada por La Cumbre es necesario que el Tribunal de Instancia determine primero si el nuevo perito presentado por los esposos De Jesús-Rodríguez se encuentra cualificado para testificar como tal o en esa capacidad.
La Regla 52 (A) de Evidencia, supra, establece que si una parte objeta la capacidad de una persona para prestar testimonio pericial es necesario que sus cualificaciones sean probadas antes de que pueda declarar como perito. Teniendo en cuenta que el juicio en este caso está pautado para junio de 2010, es decir para dentro de aproximadamente ocho meses, no sería prudente mantener a las partes incurriendo en gastos de litigio sin antes determinar si el perito, en efecto, está cualificado para emitir una opinión.
Si el Tribunal de Primera Instancia determina que el perito, en efecto, no está cualificado, debe entonces considerar en sus méritos la moción de sentencia sumaria, al amparo de la segunda modalidad. En el ejercicio de su sana discreción, el Tribunal de Instancia debe tener en cuenta que, para que proceda la solicitud de *772 sentencia sumaria por insuficiencia de la prueba, La Cumbre debe haber demostrado que no existen controversias de hechos materiales y que como cuestión de derecho procede que se dicte la sentencia sumaria a su favor. Además, tiene que ponderar si los esposos De Jesús-Rodríguez no cuentan con otra evidencia para probar, al menos, el hecho esencial de su reclamación, en este caso, el elemento de la negligencia imputada a los peticionarios.
A pesar de que en nuestro ordenamiento jurídico no se recomienda disponer de un caso sumariamente cuando está presente el elemento de negligencia, dicha norma no es absoluta. El Tribunal de Primera Instancia sólo puede dictar sentencia sumaria a favor de La Cumbre si entiende que no hay una controversia genuina sobre la negligencia imputada. [5]
Por el contrario, si el tribunal a quo determina que el perito está cualificado, entonces podría, a su discreción, denegar la solicitud de sentencia sumaria por insuficiencia de la prueba, pues debe darle la oportunidad a los esposos De Jesús-Rodríguez de probar su caso en un juicio plenario. De manera que la cuestión técnica también se dirima por el tribunal por preponderancia de toda la prueba que presente cada parte.
Es decir, el tribunal debe evaluar las cualificaciones del perito y determinar, en estos momentos, si tiene el especial conocimiento o experiencia para permitirle participar como tal en el juicio. No obstante, si el tribunal a quo determina que este perito no aportará el “expertise” apropiado en el juicio, entendemos que tal conclusión fortalecería la petición de La Cumbre de acelerar la adjudicación del caso de manera sumaria. Por eso es que la controversia sobre la cualificación del perito está íntimamente atada a la solicitud de sentencia sumaria por insuficiencia de la prueba.
Ahora bien, es importante destacar que lo que va a dirimir el foro primario es si el perito anunciado está cualificado para testificar y no la credibilidad que le merezca su persona o su testimonio anunciado. Son asuntos diferentes. Sobre este particular, el Tribunal Supremo ha resuelto que no es recomendable utilizar el mecanismo procesal de sentencia sumaria en casos donde el factor de credibilidad juega un papel esencial, si no decisivo, para llegar a la verdad, o cuando el litigante depende en gran medida de lo que extraiga del contrario en el curso del juicio. (Énfasis nuestro.) Soto v. Hotel Caribe Hilton, 137 D.P.R. 294, 301 (1994).
Estos pronunciamientos son acordes al propósito que anima las Reglas de Procedimiento Civil, cuyo fin último es promover la tramitación rápida y efectiva de los casos y que no se prolonguen más de lo necesario. Regla 1 de las de Procedimiento Civil, 32 L.P.R.A Ap. Ill, R. 1.
IV
Por los fundamentos expresados, se expide el auto de certiorari, se revoca la orden de 14 de julio de 2009 y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos, según lo aquí dispuesto.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 21

. El Tribunal de Primera Instancia dictó una sentencia sumaria parcial el 8 de mayo de 2009 en la que desestimó la acción por vicios de construcción presentada contra los co-demandados Jesús Montano Valea, Daisy Rodríguez Meléndez y la sociedad legal de gananciales compuesta por ambos. En la sentencia sumaria parcial, el Tribunal de Primera Instancia determinó que la acción por vicios de construcción contra los co-demandados estaba prescrita y que la prueba presentada *773 estableció que no existían los vicios alegados.

. La Cumbre propuso reparar a su costa y ceder gratuitamente para esos fines parte de sus terrenos para la reparación.

. El Tribunal de Primera Instancia ordenó el 3 de marzo de 2008 a los esposos De Jesús-Rodríguez y a los esposos Montano-Rodríguez gestionar el pago, por partes iguales, de $80,000 como fianza. En la demanda enmendada radicada el 1 de abril de 2008, los esposos De Jesús-Rodríguez alegaron que el costo de reparación del muro era $350,000. Aunque el muro ya fue reparado, continúa la reclamación por los daños.

. Esta sentencia fue apelada ante el Tribunal de Apelaciones (KLAN-2009-00824) y, mediante sentencia emitida el 28 de septiembre de 2009, el Tribunal de Apelaciones confirmó la sentencia sumaria parcial dictada por el tribunal a quo. Hasta el momento, hay una moción de reconsideración pendiente por resolver por lo que la misma no ha advenido final y firme.

. Por lo tanto, tiene que quedar establecido que no hubo una acción u omisión por parte de La Cumbre que causara el daño alegado y que no existe un nexo causal entre la acción u omisión alegada y el daño sufrido.